### In re ELLIS et al.

### Patent Appeal No. 2639.

Court of Customs and Patent Appeals.
March 25, 1931.

Ralph N. Flint, of Detroit, Mich., and Arthur W. Davidson, of Washington, D. C., for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals affirming that of the examiner refusing to allow claims 17 to 21, inclusive (claims 7, 8, 9, 10 being allowed), relating to the distillation and purifying of oil in an internal combustion engine. Claims 17 and 18 are illustrative and follow:

"17. In combination with an internal-combustion engine having a crankcase, and an exhaust conduit; a distilling vessel associated with said exhaust conduit so as to be heated thereby; means for supplying lubricating oil from the crankcase of said engine to said distilling vessel; and a thermostat separate from and located within and attached to a wall of said distilling vessel, and adapted to control the flow of oil thereinto through said supply means.

"18. In a device of the class described, a distilling vessel; a pump; means for conveying oil from said pump to said distilling vessel; a valve for controlling the flow of oil through said conveying means; and a thermostat located within said distilling vessel and which thermostat is complete in itself and independent as a structure from said distilling vessel, said thermostat being operatively connected with said valve to thereby control the flow of oil through said conveying means."

The grounds of rejection of said claims by the Board of Appeals, as we understand its decision, is in substance to the effect that the appealed claims are not considered patentably different from claims 8 and 13 allowed to Hans in the reference Hans, 1,420,837, June 27, 1922, concerning which the appellants herein had been a party in an interference proceeding in the Patent Office and in which interference priority was definitely awarded to Hans. Priority having been awarded to Hans in the only patentable subject-matter involved in the claims herein appealed and in the counts of the interference, the board found that the appellants could not afterwards successfully contend for the allowance of broad claims covering the same patentable subject matter. The counts in the interference between appellant and Hans, as above stated, were claims 8 and 13 of the Hans patent, and follow:

"Count 1. A purifier for the lubricating oil of an internal combustion engine consisting of a heating chamber having a volatile

gas outlet, means for heating said chamber, means to cause lubricant to flow from said engine to said heating chamber, means to regulate the flow of the lubricant into said heating chamber, and means actuated by the temperature of the lubricant for controlling the means regulating the flow of the lubricant into said heating chamber.

"Count 2. In a purifier for the lubricating oil of an internal combustion engine, the combination of a chamber to receive the oil, means for heating the oil in the chamber, means for causing the oil to flow from the engine to the heating chamber, and a thermostat controlled by the heated oil to regulate the flow of the oil."

It will be noted that in the claims of the Hans patent the matter involved in dispute was in claim 8 (count 1) in a thermostat "actuated by the temperature of the lubricant," and in claim 13 (count 2) it was in a thermostat that was "controlled by the heated oil." The rejected claims in this appeal are directed to the same subject-matter as that involved in the interference, and expressed in the following language in claim 17 of the application at bar: "And a thermostat separate from and located within and attached to a wall of said distilling vessel, and adapted to control the flow of oil." While in claim 18 the following language is used: "And a thermostat located within said distilling vessel and which thermostat is complete in itself and independent as a structure from said distilling vessel, said thermostat being operatively connected with said valve to thereby control the flow of oil."

As the case is presented here by the appellants, they take the position that in the interference with Hans, the board held that they could not make the counts of the interference since their claims and disclosure did not respond to the terms in the counts of the interference "actuated by the temperature of the lubricant" and "controlled by the heated oil." Appellants insist that since the board has held that their disclosure does not read upon the counts of the interference, which they contend is equivalent to holding that their invention is different from that of Hans, they are now entitled to a patent upon their means of thermostatically controlling the flow of oil. They complain of the fact that now, after having in effect been denied their rights in the interference proceeding (if the inventions were the same), their claims are improperly rejected on Hans either as prior art or on account of the judgment against them in the interference case.

This anomalous situation, arising from the foregoing facts, presents a problem which at first blush would seem difficult of solution, but when, upon closer consideration, the facts are carefully analyzed and the law is applied, it is found to be much less formidable.

The first question that arises is: Does the disclosure of appellants show, and do their claims in issue call for, anything patentable over and above the counts of the Hans patent involved in the interference. The structures of appellants and Hans are alike in principle. The thermostat in Hans' structure is in the oil in the distilling vessel, while in appellants' structure, as affects the issue here, the claims require only that it be on the inside of the distilling vessel. The heat comes from the same source, the exhaust pipe, in both devices. We do not see any patentable distinction between the two devices. The claims of the application and the counts of the interference all call for the same invention.

It is true that appellants' structure does not literally read upon the exact words of the counts of the interference, since their thermostat is not in the oil, but since we conclude that both are claiming the same invention, priority in fact should have been determined before the examiner of interferences, whereas it seems to appear from the record that priority was awarded Hans because he was the first inventor of the particular thing Hans claimed (when limited by the exact terms used) and which appellants claimed in words which did not read upon the exact language used by Hans, that is to say, appellants did not show in the interference proceeding that they were entitled to priority of the particular structure which the counts called for, regardless of whether the inventions of both parties were the same.

Under the circumstances of this case, the fact that there was a mistake or inadvertence in the interference proceedings which brought about a failure to adjudicate the real issue between the parties is no justification now for the allowance of applicant's claims which would clearly cover the patented subject-matter in Hans.

It is well settled that the primary examiner could have, and we think should have, suggested a claim broad enough to cover the invention claimed by both, if he believed that the application and the patent were both calling for the same invention. That the examiner did believe they called for the same invention is evidenced by the fact that he

brought about the interference. Evidently the examiner of interferences, however, believed that they were not the same invention, or else erroneously concluded that even if they were the same invention, priority in fact could not be determined, since the language in the counts taken from the Hans patent, if strictly and literally applied, would not respond to the disclosure of applicant.

That it was proper for the examiner to suggest a count which would cover the real invention common to both applications is supported by Ex parte Card and Card, 112 O. G. 499, 1904 C. D. 383, and Ex parte Behan, 353 O. G. 8, 1926 C. D. 108.

The Patent Office has ruled in Parker v. Craft and Reynolds, 265 O. G. 305, 1919 C. D. 72, that where the same invention is included in a claim of a patent and a claim of an application even though the wording of the claims are different and one slightly broader than the other, that there was "no informality in the declaration of the interference" and that there was "no reason why any relevant testimony of either party should not come under the broad issues and properly try out the question of priority, and the motion to dissolve on this ground should be overruled." To the same effect is Bonine v. Bliss, 265 O. G. 306, 1919 C. D. 75, and Ex parte Card and Card, supra. The record before us and the argument of counsel show that the Patent Office tribunals did not decide the interference between appellants and Hans with this understanding of the practice and did not apply this principle in the decision of the interference.

In Bonine v. Bliss, supra, the commissioner held that:

"An interference was properly declared between the claim of a patent which specified a 'manually operated switch' and the claim of an application for a similar apparatus in which a similar part was referred to by the broader term 'switch' where the result of closing the switch was the same in each case— namely, to connect a dynamo-electric machine to a battery, so that it might operate as a motor, and to open an automatic switch." Quoted from syllabus.

In Ex parte Card and Card, supra, involving a situation quite similar to the one at bar, the acting commissioner said:

"It seems clear that if the Examiner is right in his views as to the question of patentability and as to the materiality of the differences between the claims the procedure outlined by him is proper. The ruling that the real invention claimed is the same is not necessarily inconsistent with the ruling that the applicant should present a claim in different form to constitute the issue of an interference. There may be a real conflict notwithstanding differences in the wording of claims, and the requirement as to the form of the claim is not for the purpose of bringing about a conflict, but to define the conflicting subject-matter in the same words in both cases, so as to avoid confusion and prevent disputes.

"It must be held as a matter of procedure that the Examiner was right in suggesting the claims of the patentee to these applicants and in his statement that if they failed to make them certain of the claims which they now make will be rejected. An applicant cannot be permitted to avoid an interference with a patentee by carefully avoiding the words of his claims when the real invention claimed is the same. When he claims substantially the same thing, he can secure his patent only by proving priority of the invention in the regular way."

Furthermore we agree with the holding in Ex parte Peabody, 1927 C. D. 83, 364 O. G. 511, the syllabus of which is as follows:

"Where, in an interference involving an applicant and a patent, the Law Examiner, in a decision holding that the applicant can not make the claim of the patent, stated that if there was no patentable distinction between the claim in issue and the subject matter originally claimed by the applicant a claim could be presented in language broad enough to cover both cases and applicant did not present such a claim. Held that after the termination of the interference he is estopped to present claims broad enough to cover the structure of both parties."

If the holding in the Peabody decision, supra, is followed, it points to the proper conclusion in the case at bar. We believe both parties claimed the same invention. A count should have been framed in the interference which would have been broad enough to have covered both structures. It was the duty of appellants herein, under rule 109 of the United States Patent Office, to have suggested and presented such a claim for consideration in the interference proceeding. Failing to do so and failing to be successful in the interference on counts which called for the invention at issue here, they cannot now obtain an allowance of claims which cover the subject-matter which was proper for consideration in the interference case. See In re Marconi, 38 App. D. C. 286, 1912 C. D.

483; In re Austin, 17 C. C. P. A. 1202, 40 F.(2d) 756.

Appellants argue that they are entitled to a patent notwithstanding Hans by virtue of their proceeding under section 4886 of the Revised Statutes, as amended (35 USCA § 31) and rule 75 of the rules of practice of the Patent Office. Appellants rely upon their proceedings under this rule on the theory that the reference Hans "does not claim the rejected invention." As is hereinbefore indicated, we think Hans does claim the rejected invention. Certainly this rule has no application where the rejected invention consists of the same patentable subject-matter awarded to another in an interference in which the applicant was a party.

The decision of the Board of Appeals is affirmed.

Affirmed.